UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID MOORE, JOHN NAPOLEONE,       :
MICHAEL MCCLAIN, ROGER FALCONE,    :
DANIEL LORIS AND CAROLINE MORETTI  :
                                   :
VS.                                :
                                   :
SHAWN SEQUEIRA, MARK LAURETTI,     :
AND CITY OF SHELTON                :          JUNE 9, 2021

## COMPLAINT

### I. PRELIMINARY STATEMENT

1.  This is an action to redress the deprivation of rights secured to the plaintiff by the Constitution and laws of the United States and the State of Connecticut.  The plaintiffs, David Moore, John Napoleone, Michael McClain, Roger Falcone, Daniel Loris and Caroline Moretti, bring this action against defendants Chief Shawn Sequeira, Mayor Mark Lauretti, and the City of Shelton, pursuant to 42 U.S.C. §§ 1983, 1988, for the deprivation of their right to exercise free speech, assembly, and association, guaranteed to them under the First amendment to the United States Constitution.  The plaintiffs also assert supplemental state law claims against the individual defendants for violation of Connecticut General Statutes § 31-51q, defamation, invasion of privacy and, intentional infliction of emotional distress.  Plaintiffs also bring a claim for indemnification pursuant to Connecticut General Statutes § 7-465 against the City of Shelton.

## II.  PARTIES

1.   At all times relevant to this complaint, the plaintiffs were all employees for the City of Shelton working as police officers in various ranks for the patrol division.  Plaintiffs are all citizens of the United States and residents within the State of Connecticut.

2.   At all times relevant to this complaint, the defendant, Shawn Sequeira was the Chief of Police for the City of Shelton.  He is being sued in his individual capacity.  Defendant is a citizen of the United States and resident within the State of Connecticut.

3.   At all times relevant to this complaint, the defendant, Mark Lauretti, was the Mayor for the City of Shelton.  He is being sued in his individual capacity.  Defendant is a citizen of the United States and resident within the State of Connecticut.

## III.  JURISDICTION AND VENUE

4.   The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343.  The state law claims, and the federal law claims derive from a common nucleus of operative facts, thus conferring upon this Court supplemental jurisdiction over the state causes of action pursuant to 28 U.S.C. § 1367.

## IV.  FACTS

### A. As To The Plaintiff David Moore

5.   The plaintiff, David Moore was hired by the City of Shelton as a police officer on April 19, 1999.  Throughout his career he performed commendably and was promoted to Sergeant in November of 2006 and then to Lieutenant in July of 2011.  At all times relevant herein the plaintiff was assigned to the Patrol Division.

6.   On January 31, 2020, the plaintiff was elected to the position of Vice President of the Shelton Police Union.

7.   On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain for the Shelton police department.  Prior to his hire in Shelton, Sequeira was a Connecticut State Trooper.  In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case stemming from the finance department in the City of Shelton.  During that investigation it was discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly embezzling money from the City of Shelton.  Interestingly, defendant Sequeira never included Lauretti as part of the investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the ranking city official was responsible for the day to day operations of the finance department.

8.   The Union for the Shelton police department did not include the rank of Captain or above as members.  The only rank above Captain was that of Chief of Police.  The Chief of Police in 2015 was Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-

year extension in April of 2015.  However, in Sequeira's resignation letter to the State Police, he indicated that his opportunity for advancement from Captain was going to happen in the very near future.  Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in November of 2015 and then formally made him Chief of Police on July 1, 2017.  Sequeira was never a member of the Shelton police department Union.  Sequeira was in constant conflict with the Union from the start of his employment and remains in conflict with the Union to this date.  Sequeira has made it known repeatedly that he has issues with both with Union leadership and its members.

9.    In April of 2020, the defendants, acting jointly and in concert with one another, directed that the male and female locker rooms/bathrooms be closed, purportedly because one male officer tested positive for COVID.  Specifically, on May 18, 2020, the defendants issued an order to all patrol officers that they were shutting the Police Department building to all patrol officers and there would be no access to any of the eleven (11) indoor restrooms in the building, including the first-floor bathroom that was open to the public.

10.  The defendants then arranged for two porta-potties to be delivered to the Shelton Police Department parking lot.  There were no hand-washing stations or any place to change your clothes other than in the parking lot.

11.  Prior to the closure, the locker rooms were always used by the officers to change their clothes both before and after their shifts.  This had been the normal course of conduct for all officers in the City

of Shelton as well as any police department because police officers do not want to be dressed while driving to and from work as they are not on duty.  Moreover, especially in the context of COVID the police officers changed their clothing in the locker rooms before reporting for duty and before going home to ensure their health and the health of their loved ones.

12.  After the closure of the locker rooms, all patrol men and women are told that they may not enter the police department for any reason (including punching in and out on the clock for their shift) and instead are to use the porta potties in the parking lot as bathrooms.

13.  The decision by the defendants to use porta potties in a parking lot for their officers to go to the bathroom and change in and out of their uniforms caused wide upset for both the constituents in the City of Shelton as well as the members of the police department.

14.  Although Union representatives wanted the issue to be bargained under the contract, the defendants did not acknowledge any requests nor was the unsanitary, humiliating, and unsafe conditions ultimately ever part of a formal union labor dispute.

15.  However, to document the condition that the patrol officers were facing, plaintiffs, Roger Falcone, Daniel Loris, and Caroline Moretti, took pictures of officers changing in the parking lot.  Those pictures were then posted in June of 2020 on a Facebook page which had been created by a Shelton resident entitled "Support the Shelton Police Union."

16.  The posting of those photographs created a public outcry against the mistreatment of the Shelton patrol men and women by the defendants.  As a result, the public started organizing a rally to take place on July 2, 2020.

17.  Defendants held their own rally on June 25, 2020.  This rally was videoed by a member of the public and posted to social media, YouTube.  In attendance at the rally was defendant Sequeira who was the lead speaker.  Also present was Eneida Martinez, Bridgeport Councilwomen, Dennis Bradley, State Senator, Ernie Newton, former Bridgeport politician and approximately 20 members of the general public mostly from Bridgeport.  During that rally defendant Sequeira proclaimed that he had the full backing and support of the defendant Mayor Lauretti.  During that rally defendants indicated that plaintiff Moore is a racist and referred generally to the entire police department, its union members, and the population of Shelton, as being racist.  Eneida Martinez, walked around with a bullhorn calling plaintiff Moore a racist and carried a sign stating Moore is a racist.  During that rally defendant Sequeira screamed, yelled, and ranted about his decision to have the plaintiffs and the other patrol members use porta-potties in a parking lot.  While the entire display put on by Sequeira was defamatory, an atrocity, and his conduct unbecoming of an officer, clearly, he believed he had a right to assemble publicly and speak about the bathroom issue referencing the plaintiffs as he did so.

18.  On June 28, 2020, the plaintiff, David Moore posted a flyer on the Union Bulletin Board inside the police department providing details of the public rally that was taking place on July 2, 2020.  When

the defendant, Sequeira was notified of the flyer he ordered that it be taken down (even though it was part of the Union Bulletin Board and involved public assembly) and proceeded to interrogate the plaintiff Moore as well as plaintiff John Napoleone, who was the Union President at that time.

19.  On July 2, 2020, the public rally organized by the citizens of Shelton in support of their Shelton police officers took place.  The rally was heavily attended with hundreds of Shelton constituent's turning out.  The plaintiff, David Moore, who was off duty from work, attended and spoke at the rally.

20.  Upon information and belief, on the day of the rally, the individual defendants were not in attendance but had their representatives attend to take a tally of those Shelton officers who were in attendance.  In addition, the rally was covered by news channel Fox 61 and posted to its FaceBook page.

21.  On July 3, 2020, the plaintiff David Moore, was placed on administrative leave by the defendants.  Moore was informed that he was the subject of an Internal Affairs (IA) investigation stemming from an Internal Affairs investigation he had co-investigated with another Lieutenant over a year prior in 2019.  At no time prior to Moore's attending and speaking out at the rally, was he subject to any discipline stemming from the 2019 incident.  That matter had been closed and was opened solely because of Moore's speech and his affiliation with the Union.

22.  On July 20, 2020, the plaintiff, David Moore, was terminated from his employment.  The other Lieutenant who was also part of the prior investigation, but who did not exercise his first amendment rights, nor was a union leader, was not disciplined in any manner.

23.   Almost immediately after plaintiff Moore was terminated, defendants released his termination letter to the news media, including WTNH, FOX 61, the Shelton Herald, and the CT Post.  Upon information and belief, Defendants turned over this termination letter voluntarily and purposefully to the media, and not in response to a FOIA request or any other request by the media or public.  The media took the termination letters and aired them and/or posted them online and can now generally be found if one conducts a basic google search.

24.  The termination letters contain false, inflammatory, and self-serving statements made by the defendants which were written with malicious intent towards the plaintiff Moore.

25.  The defendants also gave verbal statements to the news media that contained false, inflammatory, and self-serving statements that were made to the press and the public with malicious intent towards the plaintiff Moore.

**B.      As To Plaintiff John Napoleone**

26. The plaintiff, John Napoleone, was hired by the City of Shelton as a police officer on May 9, 2003.  Throughout plaintiff's career he performed commendably and remained assigned to the Patrol Division.

27. In January of 2015, the plaintiff was elected to the position of President of the Shelton Police Union.

28.  On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain for the Shelton police department.  Prior to his hire in Shelton, Sequeira was a Connecticut State Trooper.  In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case stemming from the finance department in the City of Shelton.  During that investigation it was discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly embezzling money from the City of Shelton.  Interestingly, defendant Sequeira never included Lauretti as part of the investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the ranking city official was responsible for the day to day operations of the finance department.

29.  The Union for the Shelton police department did not include the rank of Captain or above as members.  The only rank above Captain was that of Chief of Police.  The Chief of Police in 2015 was Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-year extension in April of 2015.  However, in Sequeira's resignation letter to the State Police, he indicated that his opportunity for advancement from Captain was going to happen in the very near future.  Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in November of 2015 and then formally made him Chief of Police on July 1, 2017.  Sequeira was never a member of the Shelton police department Union.  Sequeira was in constant conflict with the Union from the start of his employment and remains in conflict with the Union to this date.  Sequeira has made it known repeatedly that he has issues with both with Union leadership and its members.

30.   In April of 2020, the defendants, acting jointly and in concert with one another, directed that the male and female locker rooms/bathrooms be closed, purportedly because one male officer tested positive for COVID.  Specifically, on May 18, 2020, the defendants issued an order to all patrol officers that they were shutting the Police Department building to all patrol officers and there would be no access to any of the eleven (11) indoor restrooms in the building, including the first-floor bathroom that was open to the public.

31.   The defendants then arranged for two porta-potties to be delivered to the Shelton Police Department parking lot.  There were no hand-washing stations or any place to change your clothes other than in the parking lot.

32.   Prior to the closure, the locker rooms were always used by the officers to change their clothes both before and after their shifts.  This had been the normal course of conduct for all officers in the City of Shelton as well as any police department because police officers do not want to be dressed while driving to and from work as they are not on duty.  Moreover, especially in the context of COVID the police officers changed their clothing in the locker rooms before reporting for duty and before going home to ensure their health and the health of their loved ones.

33.   After the closure of the locker rooms, all patrol men and women are told that they may not enter the police department for any reason (including punching in and out on the clock for their shift) and instead are to use the porta potties in the parking lot as bathrooms.

34.  The decision by the defendants to use porta potties in a parking lot for their officers to go to the bathroom and change in and out of their uniforms caused wide upset for both the constituents in the City of Shelton as well as the members of the police department.

35.  Although Union representatives wanted the issue to be bargained under the contract, the defendants did not acknowledge any requests nor was the unsanitary, humiliating, and unsafe conditions ultimately ever part of a formal union labor dispute.

36.  However, to document the condition that the patrol officers were facing, plaintiffs, Roger Falcone, Daniel Loris, and Caroline Moretti, took pictures of officers changing in the parking lot.  Those pictures were then posted in June of 2020 on a Facebook page which had been created by a Shelton resident entitled "Support the Shelton Police Union."

37.  The posting of those photographs created a public outcry against the mistreatment of the Shelton patrol men and women by the defendants.  As a result, the public started organizing a rally to take place on July 2, 2020.

38.  Defendants held their own rally on June 15, 2020.  This rally was videoed by a member of the public and posted to social media, YouTube.  In attendance at the rally was defendant Sequeira who was the lead speaker.  Also present was Eneida Martinez, Bridgeport Councilwomen, Dennis Bradley, State Senator, Ernie Newton, former Bridgeport politician and approximately 20 members of the general public mostly from Bridgeport.  During that rally defendant Sequeira proclaimed that he had the full

backing and support of the defendant Mayor Lauretti.  During that rally defendants indicated that plaintiff Moore is a racist and referred generally to the entire police department, its union members, and the population of Shelton, as being racist.  Eneida Martinez, walked around with a bullhorn calling plaintiff Moore a racist and carried a sign stating Moore is a racist.  During that rally defendant Sequeira screamed, yelled, and ranted about his decision to have the plaintiffs and the other patrol members use porta-potties in a parking lot.  While the entire display put on by Sequeira was defamatory, an atrocity, and his conduct unbecoming of an officer, clearly, he believed he had a right to assemble publicly and speak about the bathroom issue referencing the plaintiffs as he did so.

39.  On June 28, 2020, the plaintiff, David Moore posted a flyer on the Union Bulletin Board inside the police department providing details of the public rally that was taking place on July 2, 2020.  When the defendant, Sequeira was notified of the flyer he ordered that it be taken down (even though it was part of the Union Bulletin Board and involved public assembly) and proceeded to interrogate the plaintiff Moore as well as plaintiff John Napoleone, who was the Union President at that time.

40.  On July 2, 2020, the public rally organized by the citizens of Shelton in support of their Shelton police officers took place.  The rally was heavily attended with hundreds of Shelton constituent's turning out.  The plaintiff, John Napoleone, who was off duty from work, attended and spoke at the rally.

44.  Upon information and belief, on the day of the rally, the individual defendants were not in attendance but had their representatives attend to take a tally of those Shelton officers who were in attendance.  In addition, the rally was covered by news channel Fox 61 and posted to its FaceBook page.

45.  On July 3, 2020, the plaintiff John Napoleone, was placed on administrative leave by the defendants.  Napoleone was informed that he was the subject of an Internal Affairs (IA) investigation stemming from an Internal Affairs Investigation he had been subject to with plaintiff, Michael McClain over a year prior in 2019.  At no time prior to Napoleone's attending and speaking out at the rally, was he subject to any discipline stemming from the 2019 incident.  That matter had been closed and was opened solely because of Napoleone's speech and his affiliation with the Union.

46.  On July 20, 2020, the plaintiff, John Napoleone, was terminated from his employment.

47.   Almost immediately after plaintiff Napoleone was terminated, defendants released his termination letter to the news media, including WTNH, FOX 61, the Shelton Herald, and the CT Post. Upon information and belief, Defendants turned over this termination letter voluntarily and purposefully to the media, and not in response to a FOIA request or any other request by the media or public.  The media took the termination letters and aired them and/or posted them online and can now generally be found if one conducts a basic google search.

48.  The termination letters contain false, inflammatory, and self-serving statements made by the defendants which were written with malicious intent towards the plaintiff Napoleone.

49.  The defendants also gave verbal statements to the news media that contained false, inflammatory, and self-serving statements that were made to the press and the public with malicious intent towards the plaintiff Napoleone.

**C.    As To Plaintiff Michael McClain**

50. The plaintiff, Michael McClain, was hired by the City of Shelton as a police officer on March 13, 2003.  Throughout plaintiff's career he performed commendably and remained assigned to the Patrol Division.

51. Plaintiff, McClain had a close working relationship with the defendants, Moore and Napoleone, both Union Leadership and was a supporter of his Union.

52. On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain for the Shelton police department.  Prior to his hire in Shelton, Sequeira was a Connecticut State Trooper.  In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case stemming from the finance department in the City of Shelton.  During that investigation it was discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly embezzling money from the City of Shelton.  Interestingly, defendant Sequeira never included Lauretti as part of the investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the ranking city official was responsible for the day to day operations of the finance department.

53.  The Union for the Shelton police department did not include the rank of Captain or above as members.  The only rank above Captain was that of Chief of Police.  The Chief of Police in 2015 was Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-year extension in April of 2015.  However, in Sequeira's resignation letter to the State Police, he indicated that his opportunity for advancement from Captain was going to happen in the very near future.  Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in November of 2015 and then formally made him Chief of Police on July 1, 2017.  Sequeira was never a member of the Shelton police department Union.  Sequeira was in constant conflict with the Union from the start of his employment and remains in conflict with the Union to this date.  Sequeira has made it known repeatedly that he has issues with both with Union leadership and its members.

54.  In April of 2020, the defendants, acting jointly and in concert with one another, directed that the male and female locker rooms/bathrooms be closed, purportedly because one male officer tested positive for COVID.  Specifically, on May 18, 2020, the defendants issued an order to all patrol officers that they were shutting the Police Department building to all patrol officers and there would be no access to any of the eleven (11) indoor restrooms in the building, including the first-floor bathroom that was open to the public.

55.  The defendants then arranged for two porta-potties to be delivered to the Shelton Police Department parking lot.  There were no hand-washing stations or any place to change your clothes other than in the parking lot.

56.  Prior to the closure, the locker rooms were always used by the officers to change their clothes both before and after their shifts.  This had been the normal course of conduct for all officers in the City of Shelton as well as any police department because police officers do not want to be dressed while driving to and from work as they are not on duty.  Moreover, especially in the context of COVID the police officers changed their clothing in the locker rooms before reporting for duty and before going home to ensure their health and the health of their loved ones.

57.  After the closure of the locker rooms, all patrol men and women are told that they may not enter the police department for any reason (including punching in and out on the clock for their shift) and instead are to use the porta potties in the parking lot as bathrooms.

58.  The decision by the defendants to use porta potties in a parking lot for their officers to go to the bathroom and change in and out of their uniforms caused wide upset for both the constituents in the City of Shelton as well as the members of the police department.

59.  Although Union representatives wanted the issue to be bargained under the contract, the defendants did not acknowledge any requests nor was the unsanitary, humiliating, and unsafe conditions ultimately ever part of a formal union labor dispute.

60.  However, to document the condition that the patrol officers were facing, plaintiffs, Roger Falcone, Daniel Loris, and Caroline Moretti, took pictures of officers changing in the parking lot.  Those pictures were then posted in June of 2020 on a Facebook page which had been created by a Shelton resident entitled "Support the Shelton Police Union."

61.  The posting of those photographs created a public outcry against the mistreatment of the Shelton patrol men and women by the defendants.  As a result, the public started organizing a rally to take place on July 2, 2020.

62.  Defendants held their own rally on June 15, 2020.  This rally was videoed by a member of the public and posted to social media, YouTube.  In attendance at the rally was defendant Sequeira who was the lead speaker.  Also present was Eneida Martinez, Bridgeport Councilwomen, Dennis Bradley, State Senator, Ernie Newton, former Bridgeport politician and approximately 20 members of the general public mostly from Bridgeport.  During that rally defendant Sequeira proclaimed that he had the full backing and support of the defendant Mayor Lauretti.  During that rally defendants indicated that plaintiff Moore is a racist and referred generally to entire police department, its union members, and the population of Shelton, as being racist.  Eneida Martinez, walked around with a bullhorn calling plaintiff Moore a racist and carried a sign stating Moore is a racist.  During that rally defendant Sequeira screamed, yelled, and ranted about his decision to have the plaintiffs and the other patrol members use porta-potties in a parking lot.  While the entire display put on by Sequeira was defamatory, an atrocity,

and his conduct unbecoming of an officer, clearly, he believed he had a right to assemble publicly and speak about the bathroom issue referencing the plaintiffs as he did so.

63.  On July 2, 2020, the public rally organized by the citizens of Shelton in support of their Shelton police officers took place.  The rally was heavily attended with hundreds of Shelton constituent's turning out.  The plaintiff, Michael McClain, who was off duty, attended the rally.

64.  Upon information and belief, on the day of the rally, the individual defendants were not in attendance but had their representatives attend to take a tally of those Shelton officers who were in attendance. In addition, the rally was covered by news channel Fox 61 and posted to its FaceBook page.

65.  On July 3, 2020, the plaintiff, Michael McClain was placed on administrative leave by the defendants.  McClain was informed that he was the subject of an Internal Affairs (IA) investigation stemming from an Internal Affairs Investigation he had been subject to with plaintiff, John Napoleone over a year prior in 2019.  At no time prior to McClain's attending and speaking out at the rally, was he subject to any discipline stemming from the 2019 incident.  That matter had been closed and was opened solely because of McClain's speech and his affiliation with the Union.

66.  On July 20, 2020, the plaintiff, Michael McClain, was terminated from his employment.

67.  Almost immediately after plaintiff McClain was terminated, defendants released his termination letter to the news media, including WTNH, FOX 61, the Shelton Herald, and the CT Post.  Upon information and belief, Defendants turned over this termination letter voluntarily and purposefully to the

media, and not in response to a FOIA request or any other request by the media or public.  The media

took the termination letters and aired them and/or posted them online and can now generally be found if

one conducts a basic google search.

68.  The termination letters contain false, inflammatory, and self-serving statements made by the

defendants which were written with malicious intent towards the plaintiff McClain.

69.  The defendants also gave verbal statements to the news media that contained false,

inflammatory, and self-serving statements that were made to the press and the public with malicious

intent towards the plaintiff McClain.

**D.      As To Plaintiff Roger Falcone**

70. The plaintiff, Roger Falcone, was hired by the City of Shelton as a police officer on July 7, 2008.

Throughout plaintiff's career he performed commendably and remained assigned to the Patrol Division.

71. Plaintiff, Falcone had a close working relationship with the defendants, Moore and Napoleone,

both Union Leadership and was a supporter of his Union.

72. On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain

for the Shelton police department.  Prior to his hire in Shelton, Sequeira was a Connecticut State

Trooper.  In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case

stemming from the finance department in the City of Shelton.  During that investigation it was

discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly embezzling money

from the City of Shelton.  Interestingly, defendant Sequeira never included Lauretti as part of the

investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the

ranking city official was responsible for the day to day operations of the finance department.

73.    The Union for the Shelton police department did not include the rank of Captain or above as

members.  The only rank above Captain was that of Chief of Police.  The Chief of Police in 2015 was

Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-

year extension in April of 2015.  However, in Sequeira's resignation letter to the State Police, he

indicated that his opportunity for advancement from Captain was going to happen in the very near

future.  Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in

November of 2015 and then formally made him Chief of Police on July 1, 2017.  Sequeira was never a

member of the Shelton police department Union.  Sequeira was in constant conflict with the Union from

the start of his employment and remains in conflict with the Union to this date.  Sequeira has made it

known repeatedly that he has issues with both with Union leadership and its members.

74.    In April of 2020, the defendants, acting jointly and in concert with one another, directed that the

male and female locker rooms/bathrooms be closed, purportedly because one male officer tested positive

for COVID.  Specifically, on May 18, 2020, the defendants issued an order to all patrol officers that they

were shutting the Police Department building to all patrol officers and there would be no access to any

of the eleven (11) indoor restrooms in the building, including the first-floor bathroom that was open to the public.

75.  The defendants then arranged for two porta-potties to be delivered to the Shelton Police Department parking lot.  There were no hand-washing stations or any place to change your clothes other than in the parking lot.

76.  Prior to the closure, the locker rooms were always used by the officers to change their clothes both before and after their shifts.  This had been the normal course of conduct for all officers in the City of Shelton as well as any police department because police officers do not want to be dressed while driving to and from work as they are not on duty.  Moreover, especially in the context of COVID the police officers changed their clothing in the locker rooms before reporting for duty and before going home to ensure their health and the health of their loved ones.

77.  After the closure of the locker rooms, all patrol men and women are told that they may not enter the police department for any reason (including punching in and out on the clock for their shift) and instead are to use the porta potties in the parking lot as bathrooms.

78.  The decision by the defendants to use porta potties in a parking lot for their officers to go to the bathroom and change in and out of their uniforms caused wide upset for both the constituents in the City of Shelton as well as the members of the police department.

79. Although Union representatives wanted the issue to be bargained under the contract, the defendants did not acknowledge any requests nor was the unsanitary, humiliating, and unsafe conditions ultimately ever part of a formal union labor dispute.

80. However, to document the condition that the patrol officers were facing, plaintiffs, Roger Falcone, Daniel Loris, and Caroline Moretti, took pictures of officers changing in the parking lot. Those pictures were then posted in June of 2020 on a Facebook page which had been created by a Shelton resident entitled "Support the Shelton Police Union."

81. The posting of those photographs created a public outcry against the mistreatment of the Shelton patrol men and women by the defendants. As a result, the public started organizing a rally to take place on July 2, 2020.

82. Defendants held their own rally on June 15, 2020. This rally was videoed by a member of the public and posted to social media, YouTube. In attendance at the rally was defendant Sequeira who was the lead speaker. Also present was Eneida Martinez, Bridgeport Councilwomen, Dennis Bradley, State Senator, Ernie Newton, former Bridgeport politician and approximately 20 members of the general public mostly from Bridgeport. During that rally defendant Sequeira proclaimed that he had the full backing and support of the defendant Mayor Lauretti. During that rally defendants indicated that plaintiff Moore is a racist and referred generally to entire police department, its union members, and the population of Shelton, as being racist. Eneida Martinez, walked around with a bullhorn calling plaintiff

Moore a racist and carried a sign stating Moore is a racist.  During that rally defendant Sequeira

screamed, yelled, and ranted about his decision to have the plaintiffs and the other patrol members use

porta-potties in a parking lot.  While the entire display put on by Sequeira was defamatory, an atrocity,

and his conduct unbecoming of an officer, clearly, he believed he had a right to assemble publicly and

speak about the bathroom issue referencing the plaintiffs as he did so.

83.  On July 2, 2020, the public rally organized by the citizens of Shelton in support of their Shelton

police officers took place.  The rally was heavily attended with hundreds of Shelton constituent's turning

out.  The plaintiff, Roger Falcone was on duty on the day of the rally, however, he did drive to the

location.  In addition, his daughter and family members were in attendance.

84.  Upon information and belief, on the day of the rally, the individual defendants were not in

attendance but had their representatives attend to take a tally of those Shelton officers who were in

attendance. In addition, the rally was covered by news channel Fox 61 and posted to its FaceBook page.

85.  On July 2, 2020, the plaintiff, Roger Falcone was placed on administrative leave by the

defendants.  The reason given for placing him on administrative leave was his participation in taking

pictures of the porta poties and the officers in the parking lot which were then shown to the public.

86.  On September 4, 2020, the plaintiff, Roger Falcone, was terminated from his employment.

87.   Almost immediately after plaintiff Roger Facone was terminated, defendants released his

termination letter to the news media, including WTNH, FOX 61, the Shelton Herald, and the CT Post.

Upon information and belief, Defendants turned over this termination letter voluntarily and purposefully to the media, and not in response to a FOIA request or any other request by the media or public. The media took the termination letters and aired them and/or posted them online and can now generally be found if one conducts a basic google search.

88. The termination letters contain false, inflammatory, and self-serving statements made by the defendants which were written with malicious intent towards the plaintiff Roger Falcone.

89. The defendants also gave verbal statements to the news media that contained false, inflammatory, and self-serving statements that were made to the press and the public with malicious intent towards the plaintiff Roger Falcone.

**E.    As To Plaintiff Daniel Loris**

90. The plaintiff, Daniel Loris, was hired by the City of Shelton as a police officer on January 2, 2013. Throughout plaintiff's career he performed commendably and remained assigned to the Patrol Division.

91. Plaintiff, Loris had a close working relationship with the defendants, Moore and Napoleone, both Union Leadership and was the Union Trustee.

92. On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain for the Shelton police department. Prior to his hire in Shelton, Sequeira was a Connecticut State Trooper. In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case

stemming from the finance department in the City of Shelton.  During that investigation it was

discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly embezzling money

from the City of Shelton.  Interestingly, defendant Sequeira never included Lauretti as part of the

investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the

ranking city official was responsible for the day to day operations of the finance department.

93.  The Union for the Shelton police department did not include the rank of Captain or above as

members.  The only rank above Captain was that of Chief of Police.  The Chief of Police in 2015 was

Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-

year extension in April of 2015.  However, in Sequeira's resignation letter to the State Police, he

indicated that his opportunity for advancement from Captain was going to happen in the very near

future.  Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in

November of 2015 and then formally made him Chief of Police on July 1, 2017.  Sequeira was never a

member of the Shelton police department Union.  Sequeira was in constant conflict with the Union from

the start of his employment and remains in conflict with the Union to this date.  Sequeira has made it

known repeatedly that he has issues with both with Union leadership and its members.

94.  In April of 2020, the defendants, acting jointly and in concert with one another, directed that the

male and female locker rooms/bathrooms be closed, purportedly because one male officer tested positive

for COVID.  Specifically, on May 18, 2020, the defendants issued an order to all patrol officers that they

were shutting the Police Department building to all patrol officers and there would be no access to any of the eleven (11) indoor restrooms in the building, including the first-floor bathroom that was open to the public.

95.  The defendants then arranged for two porta-potties to be delivered to the Shelton Police Department parking lot.  There were no hand-washing stations or any place to change your clothes other than in the parking lot.

96.  Prior to the closure, the locker rooms were always used by the officers to change their clothes both before and after their shifts.  This had been the normal course of conduct for all officers in the City of Shelton as well as any police department because police officers do not want to be dressed while driving to and from work as they are not on duty.  Moreover, especially in the context of COVID the police officers changed their clothing in the locker rooms before reporting for duty and before going home to ensure their health and the health of their loved ones.

97.  After the closure of the locker rooms, all patrol men and women are told that they may not enter the police department for any reason (including punching in and out on the clock for their shift) and instead are to use the porta potties in the parking lot as bathrooms.

98.  The decision by the defendants to use porta potties in a parking lot for their officers to go to the bathroom and change in and out of their uniforms caused wide upset for both the constituents in the City of Shelton as well as the members of the police department.

99.  Although Union representatives wanted the issue to be bargained under the contract, the defendants did not acknowledge any requests nor was the unsanitary, humiliating, and unsafe conditions ultimately ever part of a formal union labor dispute.

100. However, to document the condition that the patrol officers were facing, plaintiffs, Roger Falcone, Daniel Loris, and Caroline Moretti, took pictures of officers changing in the parking lot.  Those pictures were then posted in June of 2020 on a Facebook page which had been created by a Shelton resident entitled "Support the Shelton Police Union."

101. The posting of those photographs created a public outcry against the mistreatment of the Shelton patrol men and women by the defendants.  As a result, the public started organizing a rally to take place on July 2, 2020.

102. Defendants held their own rally on June 15, 2020.  This rally was videoed by a member of the public and posted to social media, YouTube.  In attendance at the rally was defendant Sequeira who was the lead speaker.  Also present was Eneida Martinez, Bridgeport Councilwomen, Dennis Bradley, State Senator, Ernie Newton, former Bridgeport politician and approximately 20 members of the general public mostly from Bridgeport.  During that rally defendant Sequeira proclaimed that he had the full backing and support of the defendant Mayor Lauretti.  During that rally defendants indicated that plaintiff Moore is a racist and referred generally to entire police department, its union members, and the population of Shelton, as being racist.  Eneida Martinez, walked around with a bullhorn calling plaintiff

Moore a racist and carried a sign stating Moore is a racist.  During that rally defendant Sequeira

screamed, yelled, and ranted about his decision to have the plaintiffs and the other patrol members use

porta-potties in a parking lot.  While the entire display put on by Sequeira was defamatory, an atrocity,

and his conduct unbecoming of an officer, clearly, he believed he had a right to assemble publicly and

speak about the bathroom issue referencing the plaintiffs as he did so.

103. On July 2, 2020, the public rally organized by the citizens of Shelton in support of their Shelton

police officers took place.  The rally was heavily attended with hundreds of Shelton constituent's turning

out.  The plaintiff, Daniel Loris, who was off duty from work, was in attendance at the rally.

104. Upon information and belief, on the day of the rally, the individual defendants were not in

attendance but had their representatives attend to take a tally of those Shelton officers who were in

attendance. In addition, the rally was covered by news channel Fox 61 and posted to its FaceBook page.

105. On July 2, 2020, the plaintiff, Daniel Loris was placed on administrative leave by the defendants.

The reason given for placing him on administrative leave was his participation in taking pictures of the

porta poties and the officers in the parking lot which were then shown to the public.

106. On September 16, 2020, the plaintiff, Daniel Loris, was terminated from his employment.

107.  Almost immediately after plaintiff Loris was terminated, defendants released his termination

letter to the news media, including WTNH, FOX 61, the Shelton Herald, and the CT Post.  Upon

information and belief, Defendants turned over this termination letter voluntarily and purposefully to the

media, and not in response to a FOIA request or any other request by the media or public.  The media

took the termination letters and aired them and/or posted them online and can now generally be found if

one conducts a basic google search.

   108. The termination letters contain false, inflammatory, and self-serving statements made by the

defendants which were written with malicious intent towards the plaintiff Daniel Loris.

   109. The defendants also gave verbal statements to the news media that contained false,

inflammatory, and self-serving statements that were made to the press and the public with malicious

intent towards the plaintiff Daniel Loris.

**E.      As To Plaintiff Caroline Moretti**

   110.The plaintiff, Caroline Moretti, was hired by the City of Shelton as a police officer on

August 26, 2017.  Throughout plaintiff's career she performed commendably and remained assigned to

the Patrol Division.

   111.  Plaintiff, Moretti had a close working relationship with the defendants, Moore and Napoleone,

both Union Leadership.  In particular plaintiff Moore was a mentor for Moretti and their friendship was

constant under scrutiny by defendant Sequeira.

   112.  On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain

for the Shelton police department.  Prior to his hire in Shelton, Sequeira was a Connecticut State

Trooper.  In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case

stemming from the finance department in the City of Shelton.  During that investigation it was

discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly embezzling money

from the City of Shelton.  Interestingly, defendant Sequeira never included Lauretti as part of the

investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the

ranking city official was responsible for the day to day operations of the finance department.

113. The Union for the Shelton police department did not include the rank of Captain or above as

members.  The only rank above Captain was that of Chief of Police.  The Chief of Police in 2015 was

Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-

year extension in April of 2015.  However, in Sequeira's resignation letter to the State Police, he

indicated that his opportunity for advancement from Captain was going to happen in the very near

future.  Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in

November of 2015 and then formally made him Chief of Police on July 1, 2017.  Sequeira was never a

member of the Shelton police department Union.  Sequeira was in constant conflict with the Union from

the start of his employment and remains in conflict with the Union to this date.  Sequeira has made it

known repeatedly that he has issues with both with Union leadership and its members.

114.  In April of 2020, the defendants, acting jointly and in concert with one another, directed that the

male and female locker rooms/bathrooms be closed, purportedly because one male officer tested positive

for COVID.  Specifically, on May 18, 2020, the defendants issued an order to all patrol officers that they

were shutting the Police Department building to all patrol officers and there would be no access to any of the eleven (11) indoor restrooms in the building, including the first-floor bathroom that was open to the public.

115. The defendants then arranged for two porta-potties to be delivered to the Shelton Police Department parking lot. There were no hand-washing stations or any place to change your clothes other than in the parking lot.

116. Prior to the closure, the locker rooms were always used by the officers to change their clothes both before and after their shifts. This had been the normal course of conduct for all officers in the City of Shelton as well as any police department because police officers do not want to be dressed while driving to and from work as they are not on duty. Moreover, especially in the context of COVID the police officers changed their clothing in the locker rooms before reporting for duty and before going home to ensure their health and the health of their loved ones.

117. After the closure of the locker rooms, all patrol men and women are told that they may not enter the police department for any reason (including punching in and out on the clock for their shift) and instead are to use the porta potties in the parking lot as bathrooms.

118. The decision by the defendants to use porta potties in a parking lot for their officers to go to the bathroom and change in and out of their uniforms caused wide upset for both the constituents in the City of Shelton as well as the members of the police department.

119. Although Union representatives wanted the issue to be bargained under the contract, the defendants did not acknowledge any requests nor was the unsanitary, humiliating, and unsafe conditions ultimately ever part of a formal union labor dispute.

120. However, to document the condition that the patrol officers were facing, plaintiffs, Roger Falcone, Daniel Loris, and Caroline Moretti, took pictures of officers changing in the parking lot.  Those pictures were then posted in June of 2020 on a Facebook page which had been created by a Shelton resident entitled "Support the Shelton Police Union."

121. The posting of those photographs created a public outcry against the mistreatment of the Shelton patrol men and women by the defendants.  As a result, the public started organizing a rally to take place on July 2, 2020.

122. Defendants held their own rally on June 15, 2020.  This rally was videoed by a member of the public and posted to social media, YouTube.  In attendance at the rally was defendant Sequeira who was the lead speaker.  Also present was Eneida Martinez, Bridgeport Councilwomen, Dennis Bradley, State Senator, Ernie Newton, former Bridgeport politician and approximately 20 members of the general public mostly from Bridgeport.  During that rally defendant Sequeira proclaimed that he had the full backing and support of the defendant Mayor Lauretti.  During that rally defendants indicated that plaintiff Moore is a racist and referred generally to entire police department, its union members, and the population of Shelton, as being racist.  Eneida Martinez, walked around with a bullhorn calling plaintiff

Moore a racist and carried a sign stating Moore is a racist.  During that rally defendant Sequeira

screamed, yelled, and ranted about his decision to have the plaintiffs and the other patrol members use

porta-potties in a parking lot.  While the entire display put on by Sequeira was defamatory, an atrocity,

and his conduct unbecoming of an officer, clearly, he believed he had a right to assemble publicly and

speak about the bathroom issue referencing the plaintiffs as he did so.

123. On July 2, 2020, the public rally organized by the citizens of Shelton in support of their Shelton

police officers took place.  The rally was heavily attended with hundreds of Shelton constituent's turning

out.  The plaintiff, Caroline Moretti, who was off duty from work, was in attendance at the rally.

124. Upon information and belief, on the day of the rally, the individual defendants were not in

attendance but had their representatives attend to take a tally of those Shelton officers who were in

attendance. In addition, the rally was covered by news channel Fox 61 and posted to its FaceBook page.

125. On June 25, 2020, the plaintiff, Caroline Moretti was placed on administrative leave by the

defendants.  The reason given for placing her on administrative leave was his participation in taking

pictures of the porta poties and the officers in the parking lot which were then shown to the public.

126. On August 12, 2020, the plaintiff, Caroline Moretti, was terminated from her employment.

127.  Almost immediately after plaintiff Moretti was terminated, defendants released his termination

letter to the news media, including WTNH, FOX 61, the Shelton Herald, and the CT Post.  Upon

information and belief, Defendants turned over this termination letter voluntarily and purposefully to the

media, and not in response to a FOIA request or any other request by the media or public. The media took the termination letters and aired them and/or posted them online and can now generally be found if one conducts a basic google search.

128. The termination letters contain false, inflammatory, and self-serving statements made by the defendants which were written with malicious intent towards the plaintiff Caroline Moretti.

129. The defendants also gave verbal statements to the news media that contained false, inflammatory, and self-serving statements that were made to the press and the public with malicious intent towards the plaintiff Caroline Moretti.

**COUNT ONE:        § 1983 VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSEMBLY AS TO SEQUEIRA AND LAURETTI**

The allegations set forth in Sections II through IV, numbering 129 paragraphs, are hereby incorporated and made fully paragraphs 1 through 129 of Count One as if fully set forth herein.

130.    The plaintiffs' speech is protected under the First Amendment as it was a matter of public concern and spoken as a citizen rather than an employee.

131.    As a direct and proximate cause of that speech, the defendants took adverse action against the plaintiffs by terminating their employment.

132.    The defendants' conduct was in retaliation against the plaintiffs for exercising their First Amendment rights under the United States Constitution and the Constitution of the State of Connecticut.

133.    As a direct and proximate result of the acts of the defendants, the plaintiffs have suffered and continue to suffer the following injuries, all of which may be permanent in nature, including but not limited to:

      a.     Reputational injury;

      b.     Loss of career and promotional opportunities;

      c.     Loss of compensation;

      d.     Salary loss and other economic damages;

      e.     Emotional injury;

      f.     Loss of interest income and benefits;

      g.     Attorney's fees.

**COUNT TWO:**      **§ 1983 VIOLATION OF FIRST AMENDMENT RIGHT TO FREEDOM OF EXPRESSIVE ASSOCIATION AS TO SEQUEIRA AND LAURETTI**

The allegations set forth in Sections II through IV, numbering 129 paragraphs, are hereby incorporated and made fully paragraphs 1 through 129 of Count Two as if fully set forth herein.

130.    The plaintiffs' association and membership with their Union is constitutionally protected.

131.    As a direct and proximate cause of that association, the defendants took retaliatory, adverse action against the plaintiffs by terminating their employment.

132.    The defendants' conduct was in retaliation against the plaintiffs for exercising their First

Amendment rights under the United States Constitution and the Constitution of the State of Connecticut.

133.    The defendants intended, by their conduct and through their power and decision-making authority, to retaliate against the plaintiffs thereby directly causing the violations of the United States Constitution.

134.    As a direct and proximate result of the acts of the defendants, the plaintiffs have suffered and continue to suffer the following injuries, all of which may be permanent in nature, including but not limited to:

      a.    Reputational injury;

      b.    Loss of career and promotional opportunities;

      c.    Loss of compensation;

      d.    Salary loss and other economic damages;

      e.    Emotional injury;

      f.    Loss of interest income and benefits;

      g.    Attorney's fees.

**COUNT THREE:    VIOLATION OF CONN. GEN. STATS. 31-51(q) AS TO SEQUEIRA AND LAURETTI**

The allegations set forth in Sections II through IV, numbering 129 paragraphs, are hereby incorporated and made fully paragraphs 1 through 129 of Count Three as if fully set forth herein.

130.    The plaintiffs' speech is protected under the United States Constitution and the

Connecticut State Constitution, as it was a matter of public concern and spoken as a citizen rather than an employee.

131.    As a direct and proximate cause of that speech, the defendants took adverse action against the plaintiffs by terminating their employment.

132.    The defendants' conduct was in retaliation against the plaintiffs for exercising their First Amendment rights under the United States Constitution and the Constitution of the State of Connecticut.

133.    Plaintiffs' speech did not substantially or materially interfere with their bona fide job performance or working relationship with the defendnats.

134.    As a direct and proximate result of the acts of the defendants, the plaintiffs have suffered and continue to suffer the following injuries, all of which may be permanent in nature, including but not limited to:

    a.    Reputational injury;

    b.    Loss of career and promotional opportunities;

    c.    Loss of compensation;

    d.    Salary loss and other economic damages;

    e.    Emotional injury;

    f.    Loss of interest income and benefits;

    g.    Attorney's fees.

**COUNT FOUR:       INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS SEQUEIRA AND LAURETTI**

The allegations set forth in Sections II through IV, numbering 1-129 paragraphs, are hereby incorporated and made fully paragraphs 1 through 129 of Count Four as if fully set forth herein.

130.    The acts of the defendants were extreme and outrageous and the said defendants intended to cause the plaintiffs to suffer severe emotional distress by engaging in such acts and/or they knew that severe emotional distress would be a likely consequence of their behavior.

131.    As a direct and proximate result of the acts of the defendants, the plaintiffs have suffered and continue to suffer the following injuries, some or all of which may be permanent in nature, including but not limited to:

a.    Reputational injury;

b.    Loss of career and promotional opportunities;

c.    Loss of compensation;

d.    Salary loss and other economic damages;

e.    Emotional injury;

f.    Loss of interest income;

g.    Attorney's fees.

**COUNT FIVE:          DEFAMATION AS TO DEFENDANTS SEQUEIRA AND LAURETTI**

The allegations set forth in Sections II through IV, numbering 1-129 paragraphs, are hereby incorporated and made fully paragraphs 1 through 129 of Count Five as if fully set forth herein.

130.    The defendants published false statements that harmed the plaintiffs and are per se defamation.

131.    The defendants statements were as a matter of fact and not opinion.

132.    The defendants statements were made with malice and with knowledge that they were false or with reckless disregard of whether it was false or not.

133.    As a direct and proximate result of the acts of the defendants, the plaintiffs have suffered and continue to suffer the following injuries, some or all of which may be permanent in nature, including but not limited to:

        a.    Reputational injury;

        b.    Loss of career and promotional opportunities;

        c.    Loss of compensation;

        d.    Salary loss and other economic damages;

        e.    Emotional injury;

        f.    Loss of interest income;

        g.    Attorney's fees.

**COUNT SIX: INVASION OF PRIVACY AS TO DEFENDANTS SEQUEIRA AND LAURETTI**

The allegations set forth in Sections II through IV, numbering 1-129 paragraphs, are hereby incorporated and made fully paragraphs 1 through 129 of Count Six as if fully set forth herein.

130.    The defendants published false statements that harmed the plaintiffs.

131.    The defendants statements were such a major misrepresentation of their character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in their position.

132.    The defendants statements were made with malice and with knowledge that they were false or with reckless disregard of whether it was false or not.

133.    As a direct and proximate result of the acts of the defendants, the plaintiffs have suffered and continue to suffer the following injuries, some or all of which may be permanent in nature, including but not limited to:

  a.    Reputational injury;

  b.    Loss of career and promotional opportunities;

  c.    Loss of compensation;

  d.    Salary loss and other economic damages;

  e.    Emotional injury;

  f.    Loss of interest income;

g.      Attorney's fees.

**COUNT SEVEN:       INDEMNIFICATION AS TO THE CITY OF SHELTON PURSUANT TO CONN. GEN. STAT. §7-465**

Paragraphs One through Twenty-Eight of Count One are hereby incorporated and made fully paragraphs One through Twenty-Eight of Count Eight.

As set forth herein, the individual defendants were City of Shelton personnel acting within the scope of their employment and under color of law, who had a duty to the plaintiffs, to protect their constitutional rights and state law rights.  The defendants breached these duties thereby directly and proximately causing the plaintiff's civil liberties and statutory rights to be violated.  To the extent the individual defendants are determined to be liable to the plaintiffs and obligated to pay damages, the defendant, City of Shelton is liable to pay any such damages on behalf of the individual defendants pursuant to the City of Shelton's statutory liability imposed by Conn. Gen. Stat. §7-465.

WHEREFORE:  Plaintiff seeks damages including, attorney's fees, costs, compensatory damages, and other relief this Court deems just.

**WHEREFORE**, as to all Counts, the plaintiffs pray that this Court:

1. Award compensatory damages to the plaintiffs;

2. Award punitive damages to the plaintiffs;

3. Award costs of this action to the plaintiff pursuant to Rule 54(d) of the Federal Rules of Civil Procedure;

4.  Award attorney's fees to the plaintiff pursuant to 42 U.S.C. §§§ 1983 and 1988 and Conn.

Gent. Stats. 31-51q.

5.  Such other and further relief as law and equity may provide.

PLAINTIFFS:  DAVID MOORE, JOHN NAPOLEONE, MICHAEL MCCLAIN, ROGER FALCONE, DANIEL LORIS, AND CAROLINE MORETTI


By:/s/Michelle N. Holmes
Michelle N. Holmes
Federal Bar Number: ct20014
49 Leavenworth St, Suite 200
Waterbury, CT  06702
203-596-1091
203-596-1093(fax)
michelle@mholmeslaw.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID MOORE, JOHN NAPOLEONE,      :
MICHAEL MCCLAIN, ROGER FALCONE,   :
DANIEL LORIS AND CAROLINE MORETTI :
                                  :
VS.                               :
                                  :
SHAWN SEQUEIRA, MARK LAURETTI,    :
AND CITY OF SHELTON               :        JUNE 9, 2021


## DEMAND FOR JURY TRIAL

The plaintiffs hereby demand a jury trial as to all counts.


PLAINTIFFS:  DAVID MOORE, JOHN NAPOLEONE,
MICHAEL MCCLAIN, ROGER FALCONE, DANIEL
LORIS, AND CAROLINE MORETTI


By:/s/Michelle N. Holmes
        Michelle N. Holmes
        Federal Bar Number: ct20014
        49 Leavenworth St, Suite 200
        Waterbury, CT  06702
        203-596-1091
        203-596-1093(fax)
        michelle@mholmeslaw.com