## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

DAVID MOORE,<br>
JOHN NAPOLEONE,<br>
MICHAEL MCCLAIN,<br>
DANIEL LORIS,<br>
CAROLINE MORETTI, and<br>
ROGER FALCONE,<br>
    *Plaintiffs*,<br><br>
    v.<br><br>
SHAWN SEQUEIRA,<br>
MARK LAURETTI, and<br>
CITY OF SHELTON,<br>
    *Defendants.*

</td><td>

No. 3:21-cv-00787 (VAB)

</td></tr>
</table>

## RULING AND ORDER ON MOTION TO STRIKE

David Moore, John Napoleone, Michael McClain, Daniel Loris, Caroline Moretti, and Roger Falcone ("Plaintiffs") have sued the City of Shelton and employees of the City of Shelton, Shawn Sequeira and Mark Lauretti (collectively, "Defendants") for alleged deprivation of their right to exercise free speech, assembly, and association, as well as for defamation, invasion of privacy, and intentional infliction of emotional distress. Compl., ECF No. 14 (Aug. 5, 2021) ("Am. Compl."). Plaintiffs also bring claims under Connecticut General Statutes § 7-465, for indemnification, and Connecticut General Statute § 31-51q, for retaliation. *Id.*

Defendants move to strike allegations from Paragraphs 7, 8, 28, 29, 52, 53, 72, 73, 92, 93, 112, and 113 of Plaintiffs' Amended Complaint. Defs.' Mot. to Strike Portions of Pls.' Am. Compl., ECF No. 17 (Aug. 27, 2021) ("Defs.' Mot.").

For the following reasons, the Court **DENIES** Defendants' motion to strike.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations

Plaintiffs allege that they were, at all relevant times, police officers in the City of Shelton. Am. Compl. ¶ 1. They also claim that Mr. Sequeira was at all relevant times the Chief of Police and Mr. Lauretti the Mayor for the City of Shelton. *Id*. ¶ 2.

In April of 2020, Defendants allegedly closed the "locker rooms/bathrooms" at Shelton Police Department because of COVID-19, and instructed police officers to instead use two porta potties that had been placed in the parking lot. *Id*. ¶¶ 9, 10, 12. Mr. Falcone, Mr. Loris, and Ms. Moretti allegedly attempted to "document the condition that the patrol officers were facing" by, in June of 2020, posting on Facebook pictures of officers changing in the parking lot. *Id*. ¶ 15. The photographs allegedly "created a public outcry" that led the public to organize a rally for July 2, 2020. *Id*. ¶ 16. Defendants, in turn, held their own rally on June 25, 2020, where they allegedly "indicated that plaintiff Moore is a racist and referred generally to the entire police department, its union members, and the population of Shelton, as being racist." *Id*. ¶ 17. During the rally, Mr. Sequeira also allegedly stated that "he had the full backing and support of Mayor Lauretti." *Id*.

Plaintiffs also claim that Mr. Sequeira ordered that a flyer promoting the July 2, 2020 rally be removed from the Union Bulletin Board, located in the police department. *Id*. ¶ 18. After issuing the order, Mr. Sequeira allegedly also interrogated Mr. Moore, who had posted the flyer, and Mr. Napoleone, who was the Union President at that time. *Id*.

On June 25, 2020, Ms. Moretti was allegedly placed on administrative leave for her "participation in taking pictures of the porta poties [sic] and the officers in the parking lot which were then shown to the public." *Id*. ¶125. Mr. Loris and Mr. Falcone were allegedly placed on

administrative leave on July 2, 2020 for the same reason. *Id.* ¶¶ 85, 105. Ms. Moretti was allegedly terminated from employment on August 12, 2020, *id.* ¶126; Mr. Falcone on September 4, 2020, *id.* ¶ 86; and Mr. Loris on September 16, 2020, *id.* ¶ 106.

Mr. Moore and Mr. Napoleone allegedly attended and spoke at the July 2, 2020 rally. *Id.* ¶¶ 19, 40. Mr. McClain, Mr. Loris, and Ms. Moretti, all of whom had a close working relationship with Mr. Moore and Mr. Napoleone, allegedly attended the rally. *Id.* ¶¶ 51, 63, 91, 103, 111, 123. Mr. Falcone was allegedly on duty the day of the rally, but "dr[o]ve to the location" and his family members attended. *Id.* ¶ 83.

On July 3, 2020, one day after the rally, Defendants allegedly placed Mr. Moore, Mr. Napoleone, and Mr. McClain on administrative leave and informed them of Internal Affairs investigations concerning older investigations that involved them. *Id.* ¶¶ 21, 45, 65. Plaintiffs claim that they had not previously been subjected to any discipline stemming from these incidents before the rally, and that these investigations allegedly had been previously "closed and w[ere] opened solely because of" Plaintiffs' speech and affiliation with the Union. *Id.* The three plaintiffs were terminated on July 20, 2020. *Id.* ¶¶ 22, 46, 65.

Plaintiffs all claim that their termination letters, which allegedly contained "false, inflammatory, and self-serving statements made by the [D]efendants which were written with malicious intent," were "voluntarily and purposefully" released to the media. *Id.* ¶¶ 23–24, 47–48, 67–68, 87–88, 107–108, 127–128.

**B.    Procedural History**

On June 9, 2021, Plaintiffs filed a Complaint. Compl., ECF No. 1 (June 9, 2021) ("Compl.").

On August 5, 2021, Plaintiffs filed an Amended Complaint.[1] Am. Compl.

On August 27, 2021, Defendants moved to strike portions of Paragraphs 7, 8, 28, 29, 52, 53, 72, 73, 92, 93, 112, and 113 from the Amended Complaint. Defs.' Mot. at 1–2; Defs.' Mem. of Law in Supp. of Mot. to Strike Portions of Pls.' Am. Compl., ECF No. 17-1 (Aug. 27, 2021) ("Defs.' Mem.").

On September 17, 2021, Plaintiffs objected to Defendants' motion to strike. Mem. in Opp'n to Defs.' Mot. to Strike, ECF No. 18 (Sept. 17, 2021) ("Pls.' Opp'n").

On October 1, 2021, Defendants replied to Plaintiffs' objection. Defs.' Reply to Pls.' Opp'n to Mot. to Strike, ECF No. 19 (Oct. 1, 2021) ("Defs.' Reply").

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . .") (citing Fed. R. Civ. P. 12(f)). The Second Circuit has held that, when a court evaluates a Rule 12(f) motion, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation [that movant wishes to strike] would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Hudson's Bay Fur Sales Canada, Inc. v. Scheflin-Reich, Inc.*, No. 90-CIV-8026 (RLC), 1991 WL 60377, at *1 (S.D.N.Y. Apr. 8, 1991) ("A motion to strike matter from a complaint as immaterial will be granted only if no evidence in support of the allegation would be admissible at trial.").

---

[1] The Amended Complaint was filed by the deadline set by the parties in their Rule 26(f) report. Rule 26(f) Report of Parties' Planning Meeting at 4, ECF No. 13 (Aug. 3, 2021).

Motions to strike under Rule 12(f) "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-CV-00370 (A)(M), 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy[,] motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted," (internal quotation marks and alterations omitted)). Furthermore, "[t]o the extent that Defendants' aim is to avoid unduly inflaming and prejudicing the jury," the court may take into account that "the Complaint will not be submitted to the jury." *Schutz v. Ne. Mortg. Corp.*, No. 3:05-CV-423 (MRK), 2005 WL 1868888, at *1 (D. Conn. July 27, 2005) (internal quotation marks omitted).

## III. DISCUSSION

Under Rule 12(f), the party moving to strike "bears a heavy burden" and must show that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit allegations to stand would result in prejudice to the movant." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013) (internal citation and quotation marks omitted).

Defendants allege that Paragraphs 7, 8, 28, 29, 52, 53, 72, 73, 92, 93, 112, and 113 "contain immaterial, impertinent, and prejudicial allegations," and should therefore be stricken. Defs.' Mem. at 11. These paragraphs contain two allegations, the first of which claims that,

> On March 26, 2015, defendant Shawn Sequeira was hired by Mayor Mark Lauretti as a Captain for the Shelton police department. Prior to his hire in Shelton, Sequeira was a Connecticut State Trooper. In 2012 Sequeira was assigned to conduct an investigation into an embezzlement case stemming from the finance department in the City of Shelton. During that investigation it was discovered that the Assistant Finance Director, Sharon Scanlon, had been blatantly

5

> embezzling money from the City of Shelton. Interestingly, defendant Sequeira never included Lauretti as part of the investigation even though it was known that he was intimately involved with Ms. Scanlon and that as the ranking city official was responsible for the day to day operations of the finance department.

Am. Compl. ¶¶ 7, 28, 52, 72, 92, 112. The second allegation that Defendants seek to have stricken states that,

> The Union for the Shelton police department did not include the rank of Captain or above as members. The only rank above Captain was that of Chief of Police. The Chief of Police in 2015 was Joel Hurliman, who to everyone's surprise retired on October 16, 2015, after he had just signed a three-year extension in April of 2015. However, in Sequeira's resignation letter to the State Police, he indicated that his opportunity for advancement from Captain was going to happen in the very near future. Not surprisingly, defendant Lauretti then named Sequeira as the Acting Chief of Police in November of 2015 and then formally made him Chief of Police on July 1, 2017. . . .

*Id.* ¶¶ 8, 29, 53, 73, 93, 113.

Defendants argue that the relevant paragraphs should be struck because "Defendant Sequeira's former employment [and] Plaintiffs' scandalous general accusations as to why the former police chief retired, and the reasons surrounding Defendant Sequeira's promotion to police chief . . . . [a]re completely untethered to any of Plaintiffs' factual or legal claims, and appear to have been included solely to cause unfavorable publicity for the defendants." Defs.' Mem. at 13–14. Defendants further state that even if the allegation were "'relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" *Id.* at 14 (quoting *Tucker*, 936 F. Supp. 2d at 16).

Plaintiffs respond that these allegations "bear directly" on their Amended Complaint because they intend "to develop the factual allegation that Mayor Lauretti is beholden to Defendant Shawn Sequeira" as a result of Mr. Sequeira's role in leading an investigation into the

City of Shelton's finance department, which Mayor Lauretti supervises. Pls.' Opp'n at 1, 3–4. According to Plaintiffs, armed with this information, the jury would then be able to consider Mayor Lauretti's motive in offering "unconditional support and assistance to Chief Sequeira in depriving the Plaintiffs of their constitutional rights[,] thereby causing them extreme financial and emotional hardship." *Id*. at 4. Plaintiffs argue that "a 'Rule 12(f) motion may not be utilized to directly strike allegations which supply background or historical material or which are of an evidentiary quality unless unduly prejudicial to defendant.'" *Id*. (quoting *S.E.C. v. Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992)).

Defendants, in reply, restate the conclusion that the relevant material is "immaterial, impertinent[,] and prejudicial to the Defendants." Defs.' Reply at 2. They also note that the investigation led by Mr. Sequeira "was conducted six years prior to the Plaintiffs' terminations and three years prior to Defendant Sequeira's promotion to Police Chief" and that he was not employed by Mr. Lauretti. *Id*. Accordingly, they argue, the identified paragraphs should be struck.

The Court disagrees.

Defendants have not cited to any authority establishing that the relevant allegations would be inadmissible. *See Lipsky*, 551 F.2d at 893 (explaining that Rule 12(f) "motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible"). The Court is also unable, at this early stage, to conclude whether the allegations would be inadmissible at trial. *See id*. ("Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. . . . And ordinarily neither a district court nor an appellate court should decide to strike a portion of the

complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.").

As to the allegations' bearing on the case, Defendants have not presented any arguments explaining why Mr. Lauretti's motive is not relevant to the case. To be sure, Plaintiffs may not rely on such allegations as "[e]vidence of a person's character or character trait[.]" Fed. R. Evid. 404(a)(1). Plaintiffs, however, have correctly indicated that motive is an element of a First Amendment case. *See, e.g.*, *Murray v. Town of Stratford*, 996 F. Supp. 2d 90, 115 (D. Conn. 2014) ("In an action for retaliation, a plaintiff bears the 'initial burden of showing that an improper motive played a substantial part in defendant's action.'" (quoting *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003)).

Permitting the allegations to remain in the Amended Complaint also will not result in prejudice to Defendants. In any event, the Amended Complaint will not be submitted to the jury, so they will not be "inflam[ed] or prejudic[ed]." *Schutz*, 2005 WL 1868888, at *1 ("To the extent that Defendants' aim is to avoid unduly inflaming and prejudicing the jury, their motion is also unnecessary because the Complaint will not be submitted to the jury." (internal citation and quotation marks omitted)).

The language at issue also does not rise to the level of being "scandalous," as Defendants claim, because it does not relate to Defendants' moral character or use repulsive language. *See Tucker*, 936 F. Supp. 2d at 16 (describing "scandalous material" as that which "reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court"); *see also Wine Mkts. Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) ("Motions to strike are not generally favored, except in relation to scandalous matters.").

As a result, Defendants have not carried their heavy burden of showing that striking the relevant paragraphs is appropriate.

Accordingly, their motion will be denied.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE